## MOSES v. LALIME & PARTRIDGE, Inc., et al.

(Circuit Court of Appeals, First Circuit. February 13, 1923.)

No. 1603.

Patents ☞328—1,333,331, claims 11, 13, 15, 17, 19, 22, 23, 25, for generating apparatus for Ford automobiles, held restricted to special form, and not infringed.

Moses patent, No. 1,333,331, claims 11, 13, 15, 17, 19, 22, 23, 25, relating to a starting, generating, and ignition apparatus for Ford automobile engines, particularly the generating apparatus, *held* restricted by the prior art to the specific form shown, and not infringed by defendant's construction, which did not contain one of the specified elements.

Appeal from the District Court of the United States for the District of Massachusetts; George Hutchins Bingham, Judge.

Suit in equity by William B. Moses against Lalime & Partridge, Inc., and others, for infringement of a patent. Decree for defendants, and plaintiff appeals. Affirmed.

Jesse A. Holton, of Boston, Mass. (Duell, Warfield & Duell and F. P. Warfield, all of New York City, on the brief), for appellant.

Marcus B. May and William Quinby, both of Boston, Mass. (Clifford B. Longley and E. L. Davis, both of Detroit, Mich., on the brief), for appellees.

Before JOHNSON and ANDERSON, Circuit Judges, and MORRIS, District Judge.

PER CURIAM. This patent infringement case was heard in the District Court by Circuit Judge Bingham, who filed the following opinion:

"This is a proceeding in equity brought by William B. Moses against Lalime & Partridge, Inc., and the Ford Motor Company charging them with infringement of letters patent No. 1,333,331, issued to said Moses March 9, 1920, on an application filed June 29, 1917. The invention relates to starting, generating, and ignition apparatus for automobile engines, with special application to the Ford automobile. So much of the invention as is here in question has to do with the generating apparatus and mounting devices therefor; the other matters not being involved. The defenses are invalidity and noninfringement.

"The invention is said to consist 'in various features of construction, combination of elements and arrangement of parts.' One feature of the plaintiff's invention resides in what is termed the supporting plate or bracket 10 to take the place of the cover plate of the old standard Ford engine and to fulfill the functions of that plate and many others.

"The forward end of the casing on the standard Ford 'is formed to provide a flanged timing gear housing 8,' which contains the timing gear on the timing or cam shaft and a gear on the crank shaft; the circumference of the latter gear being one-half that of the former and arranged to mesh therewith. To adjust bracket 10 to the timing gear housing 8, it is necessary first to remove the old

cover plate of the standard Ford engine and bolt the bracket or plate 10 to the flange of the housing on the casing and other parts; the cover plate having bolt holes positioned to register with standard points of attachment. The timing shaft is driven by the crank shaft through the instrumentality of the above mentioned gears. What is termed a plate or bracket might more properly be termed a cover plate and bracket, as one portion serves to cover the opening marked by the housing on the casing, while the remaining portion extends to the left of the engine and serves as a bracket to support the generator dynamo and its mechanism and also to completely house the transmission parts that operate the generator shaft from the timing shaft. It is enabled to perform the latter function from the fact that its arm is hollowed out. The generator and cap piece 48 are adjustably secured to the arm of the cover plate by means of bolts 15, two of which pass through the arm of the plate and the end cap piece and tap into the end of the generator.

" 'The bracket 10 is provided with a substantially large circular opening 17, which in assembly position, is concentric with the timing shaft 12. The bracket is also apertured at 18 concentrically with the armature shaft 19 of the generator unit, and a filler spout 20 is provided, suitably shouldered to engage the bracket 10 at the opening 18 and normally close the same.'

" 'By the substitution on the timing shaft 12 of the sprocket 45 for the standard lock nut therein employed means are provided for driving through a sprocket chain 46 a smaller sprocket 47 keyed to the armature shaft 19 of the generator unit, whereby the generator armature may be rotated continuously from the engine at comparatively high proportionate speeds. The generator unit 14 is formed with a substantially wide end cap member 48.'

"The filler spout 20 'provides for lubrication of the * * * generating power transmitting devices by the oil introduced for cylinder lubricating purposes,' and 'the spout being removable permits access to the end of the generator armature shaft for purposes of assembly or removal of the parts. The inner faces of the bracket 10 serve as conduits for the lubricant introduced through the filler spout and complete the oil passage between the filler spout and the engine casing, a suitable outlet being provided at the rear of the bracket where the same attaches to the timing gear housing of the cylinder casting.'

"There is a plate 53 shouldered to fit aperture 17 of the bracket or cover plate at a point opposite sprocket 45 on timing shaft 12. To assemble the parts of the plaintiff's device on the old or standard Ford engine certain parts employed on that engine have to be removed, some of which are discarded and others retained in the final assembly. The parts discarded are the crank shaft pulley, the lock nut and cover plate which are respectively supplemented by pulley 23, gear 25, sprocket 45 and the bracket or cover plate 10. The Ford commutator parts consisting of the commutator and roller arm are made use of.

. "Inasmuch as the gears on the timing shaft and crank shaft of the old Ford engine lie in the same plane and are encased by the housing on the casing, it became necessary for the plaintiff, in devising an apparatus to be applied to that engine, to provide sprocket gear 45 on the timing shaft 12 that would extend into a plane in front and outside of the housing to afford means for the transmission of power through the instrumentality of a sprocket chain, from the sprocket gear to a gear on the generator shaft. It also became necessary to incase and house the sprocket chain and the gear on the generator shaft. This the plaintiff accomplished by making the arm of the cover plate hollow. It is thus seen that the arm of the cover plate performs the function of supporting or carrying the generator and the intervening cap member 48 and serves to incase and house the gear of the generator shaft and the sprocket chain, while the cover plate proper serves to cover the gears within the housing of the engine casing and the added sprocket 45. The cap member between the arm of the cover plate and the generator serves to house the generator shaft and furnishes a bearing therefor.

"During the year 1919, and prior to the application for or the granting of any of the claims here in issue, the Ford Company continued to put on the market its standard engine, but instead of having the housing inclosing the

timing gears cast in a single piece, as formerly, it cast a portion of the housing integral with the casing of the engine, and cast the balance in a separate piece, making provision for bolting it to the housing on the main casing. The portion which it cast separately it cast in two forms. One form was merely the complement of the part cut off from the housing as previously made. The other was cast in such form that when bolted to the housing it would extend the casing and housing to the left of the engine and would serve to house and encase a generator gear and support a generator dynamo. By casting the housing on the engine in two parts and one of those two parts in two forms, the car could be sold with or without a generating attachment, and the generating attachment, if desired, could readily be added if the second or modified form was used. When this part or form is used and bolted to the main casing, the casing and housing for the gears is extended to the left of the engine and on the rear of this extension the generator is supported; its attaching end being journaled to fit into the extended casing so that it derives in large measure its support therefrom. This extended portion of the casing does not form a bearing for the shaft of the generator and there is no intervening member between it and the generator as in the plaintiff's device. When the three gears are in position on their respective shafts, they are in the same plane and are covered by the casing and housing of the engine except in front. A cover plate like the old cover plate of the Ford engine, but made sufficiently large to cover the opening, is then bolted to the housing, two of the bolts being arranged to pass not only through the cover plate and extended housing, but to enter the attaching end of the generator and hold it firmly in its journaled position. This having been done, the commutator at the end of the timing shaft, which, in the present Ford Model T, extends through an opening in the cover plate as in the old Ford engine.

"The construction and arrangement of the parts as above set forth constitute the alleged infringing device of which the plaintiff complains, and is exemplified by the engine shown in the present Ford Model T, Defendant's Exhibit 67.

"The claims in issue are 11, 13, 15, 17, 19, 22, 23, and 25, of which claims 13 and 23 may be taken as typical. Claims 13 and 23 read as follows:

" '13. In apparatus of the character described, in combination, a bracket projecting from an engine forwardly of said engine and substantially at right angles to the crank shaft thereof, a member secured to adjoin a rear face of said bracket, a generator supported from said bracket having a body portion rearwardly of said member and an armature shaft, a portion of which extends within said member, said bracket and member being shaped where they adjoin to provide a pocket, and driving connections for said generator housed in said pocket.'

" '23. In apparatus of the character described, in combination, an engine having a crank shaft, a part time shaft geared from the crank shaft, a commutator at the forward end of the part time shaft, a casing partially housing said gearing, but frontally open opposite said gearing, a member having provision for attachment to said casing to further house said gearing, said member being adapted to receive an extension of the part time shaft and said commutator, and said member having a projection beyond the engine with an attaching surface extending in a substantially vertical plane transversely of the crank shaft, an end coupling member secured adjacent said attaching surface; a generator unit secured in position adjacent the rear of said coupling member having an armature shaft extending forwardly, and gearing between the part time shaft and the armature shaft housed by the association of the first said member and the coupling member.'

"These are broad claims, particularly claim 13. This claim comprises the following elements: A bracket or cover plate with an extending arm, a member (48) adjoining said arm, a generator supported by the arm, but located at the rear of the member (48), an armature shaft extending within said member, a pocket at the junction of said member and the bracket arm, and driving connections for the generator which the pocket houses.

"At the trial I expressed the opinion that the claims in issue, being broad claims, were infringed by the defendant's device, unless their scope was re-

stricted by the prior art to the particular means disclosed in the plaintiff's specification. But since giving the matter closer study I have reached the conclusion that none of the claims are infringed by the defendants' device. All the claims alleged to be infringed call for an intervening member between the plaintiff's extension arm and the generator. The plaintiff's extension arm is of a composite character. Being made hollow, it incloses the transmission devices from the generator shaft to the time shaft, namely, the generator gear and sprocket chain. It also forms a complete housing and casing for said gear and chain, and the intervening member called for by the claims and referred to in the specification as 48 is a member located back of the casing to said gear and between it and the generator.

"The defendants' device has no such member between the casing at the rear of its generating gear and the generator, for, as above pointed out, its generator is attached to and journaled into the casing at the rear of the generator gear.

"Furthermore I am of the opinion that the claims in issue, when read in the light of the prior art, cannot be given a broad construction and that, if they can be said to involve invention, are limited to a structure of the character disclosed in the plaintiff's application. This to my mind is so clearly the situation that it hardly seems necessary to enter upon an extended discussion of the prior art.

"Letters patent No. 1,208,962, granted to Heinze, December 19, 1916, applied for May 8, 1916, is for a starting and lighting device for automobiles and particularly for the Ford car. It presents a cover plate with an extended arm on which is mounted a generator; the extended arm being at the right of the engine instead of at the left and the generator gear being connected by a sprocket chain with a gear on the crank shaft. The general features of the plaintiff's device do not differ from those of Heinze, and if his device involves invention, rendering it patentable over Heinze, it is to be found in the peculiar formation of the extended arm of the cover plate, wherein it provides a casing, a housing, and a front cover for the transmission devices connected with the generating shaft. The plaintiff's claims being thus restricted, there can be no doubt that the defendants' device does not infringe, for it does not have a cover plate with an extended arm that provides a complete casing and housing for the transmission devices connected with the generator shaft and located in a plane different from the casing and housing on the engine.

"Letters patent No. 1,107,374, granted to Swift, August 18, 1914, on an application filed October 27, 1913, is for an attachment to automobiles and particularly to the old Ford engine, for generating current, the general features of which do not differ from the plaintiff's except that a magneto dynamo instead of a generator dynamo is used for generating the current. Swift provides an additional gear to operate the shaft of the magneto dynamo and by substituting a new gear for the old timing gear having arms extending into a plane in front of the housing on the engine casing, that gear is made to mesh with the added gear that operates the shaft of the magneto dynamo. The magneto dynamo is situated at the left of the engine casing and the gear that operates its shaft is incased and housed by the extended arm of the front plate. The old commutator of the Ford machine is made use of as in the plaintiff's device. What has been said as to the patentable novelty of the plaintiff's device over that of Heinze applies to this patent as well.

"Letters patent No. 949,634, granted to Remy, February 14, 1910, on an application filed March 22, 1909, shows a casing cast on the front of an engine, housing a gear on a crank shaft and partially housing a gear on the time shaft, the balance of said gear and a gear on a shaft operating a magneto dynamo being inclosed by a casing and housing cast separately and bolted to the housing on the casing of the engine. The gears are all arranged in the same plane to mesh with one another as in the defendant's device complained of. The general arrangement and parts employed differ in no material respect from those employed by the defendants, either as to the casing or the gears, for the substitution of a generator dynamo for magneto dynamo is a mere matter of choice.

"The Northway engine represented by Exhibit No. 80, which is also a part of the prior art, has a casing and housing cast integrally with the casing of the engine making provision for housing the gears· on the crank shaft, the timing shaft, and the generator shaft, with the generator mounted on the extended portion of the casing and housing. It differs in no material respect from the arrangement in Remy in the defendants' alleged infringing device. It merely goes to confirm what I have previously said, that the patentable novelty of the plaintiff's device, if any, resides in the special features of its cover plate and extended arm or bracket and not in the general features employed by the defendants. See, also, Ford Model K of 1905–1906, and Ford "999" Racing Motor of 1911–1912.

"In view of the disclosures of the prior art, I am of the opinion that the claims in issue must be restricted to the special features embodied in plaintiff's cover plate and intervening cap member 48, and, as thus restricted, they are not infringed by the defendants.

"A decree may be prepared dismissing the bill, with costs to the defendants."

On appeal, the case has been elaborately argued and briefed, and after careful consideration we are satisfied with the reasoning and conclusion reached in the opinion below and adopt the same as the opinion of this court.

The decree of the District Court is affirmed, with costs to the appellees in this court.